IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CROWN ASSETS, LLC, | ) | Case No. 20-21451-JRS |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| SAHIB ARORA; VINEET SINGH; | ) | Removed Case: |
| KING GROUP MGMT, LLC; | ) | |
| MAHARAJA INVESTMENTS, LLC; and | ) | Fulton County, Superior Court, |
| ZILLIONAIRE ASSETS, LLC, | ) | Case Number 2020CV339119 |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: |
| | ) | |
| CHARANJEEV SINGH; KARAN S. AHUJA; | ) | 20-02041-JRS |
| JARNAIL SINGH; JONIKA ARORA; | ) | |
| CROWN ASSETS, LLC; 2551 E PINETREE | ) | |
| BLVD MGMT LLC; 2551 EAST PINETREE | ) | |
| BLVD LLC; 4319 COVINGTON HWY LLC; | ) | |
| 140 W DYKES STREET LLC; 1604 E | ) | |
| OGLETHORPE BLVD LLC; KING ASSETS, | ) | |
| LLC; and 2505 S MAIN STREET, LLC, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**REPLY IN SUPPORT OF RESPONDENTS CHARANJEEV SINGH, KARAN S. AHUJA, JARNAIL SINGH, JONIKA ARORA, CROWN ASSETS, LLC, 2551 E PINETREE BLVD MGMT LLC, 4319 COVINGTON HWY, LLC, 140 W DYKES STREET LLC, 1604 E OGLETHORPE BLVD, LLC, KING ASSETS, LLC, AND 2505 S MAIN STREET, LLC'S MOTION TO DISMISS IN PART**

Respondents Charanjeev Singh ("**Charanjeev**"), Karan S. Ahuja ("**Ahuja**"), Jarnail Singh ("**Jarnail**"), Jonika Arora ("**Jonika**"), Crown Assets, LLC ("**Crown**" or "**Debtor**"), 2551 E Pinetree Blvd Mgmt LLC ("**Pinetree Management LLC**"), 4319 Covington Hwy, LLC ("**Covington LLC**"), 140 W Dykes Street LLC ("**Dykes LLC**"), 1604 E Oglethorpe Blvd, LLC

1

("**Oglethorpe LLC**"), King Assets, LLC ("**King Assets**"), and 2505 S Main Street, LLC ("**Main LLC**") (collectively, the "**Crown Respondents**"), by and through their undersigned counsel, respectfully file this Reply in support of their Motion to Dismiss in Part (Doc. No. 20), and respectfully show the Court as follows:

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Petitioners Misconstrue the Law Relating to Duress.

The Petitioners have attempted to read a limitation into the law regarding duress, which is not present. The Petitioners argue that only the defense of economic duress is unavailable when the parties claiming duress are sophisticated businesspersons and had access to and used the services of an attorney. (Doc. No. 26 at 9-13). There is no such limitation in the law. To the contrary, the law broadly states the principle as it applies to duress.

It is well-established that "when the signer of an agreement is sophisticated in business matters and has access to and in fact obtains advice of counsel, the defense of duress is not available to void the contract." *Compris Technologies v. Techwerks, inc.,* 274 Ga.App. 673, 682 (2005) (quoting *Cooperative Resource Center v. Southeast Rural Assistance Project,* 256 Ga.App. 719, 720-721 (2002); *See also*, *In re Chatham Parkway Self Storage, LLC*, 507 B.R. 13, 22 (Bankr. S.D. Ga. 2014)).

Petitioners claim "[a] more fulsome reading of *Compris* reveals the full scope of Georgia law on duress." (Doc. No. 26 at 11-12). In doing so, Petitioners argue that the holding applies only to economic duress. Petitioners misread the ruling. There is no question that *Compris* included a conversation regarding economic duress. However, immediately following that discussion, as quoted by Petitioners, the Court concluded "*And,* ***in any event****, when the signor of an agreement is sophisticated in business matters and has access to and in fact obtains advice from counsel, the*

2

*defense of duress is not available to avoid the contract.*" (Doc.. No. 26 at 12, quoting *Compris*, 274 Ga.App. at 682 (*emphasis in original*) (emphasis added)). The Court in *Compris* did not impose a limitation and say "And, in cases of economic duress…" Instead, the Court broadly stated "in any event." Petitioners improperly attempt to limit the holding in *Compris*. Moreover, Petitioners did not cite a single case stating that the principle of law relied on by the Crown Respondents is limited to cases of economic duress.

 The Petitioners also attempt to misconstrue the law by drawing an inapplicable parallel to the signing of a deed prepared by a lawyer, claiming "[A] deed executed under compulsion or duress is not binding on the maker." (Doc. No. 26 at 13, quoting *Gilmore et us v. Hunt*, 137 Ga. 272, 73 S.E. 364, 365 (1911)). However, Petitioners' reliance on *Gilmore* is misplaced. There is no reference to any of the parties obtaining advice from counsel, and the decision itself indicates that the deed in question was prepared by "George T. Gilmore," who is identified in the case as the alleged creditor of the plaintiff's husband (i.e. there is no reference to Mr. Gilmore as being an attorney and offering advice to any party.) *Gilmore*, 73 S.E. at 364-366. The Petitioners reached back to 1911 to pull a case that is not applicable to the circumstances of this case in an effort to suggest documents drafted by a lawyer could be voidable by duress. Interestingly, the Petitioners argument is based on a case not involving a lawyer, and Petitioners' argument is based on a document drafted by counsel without distinguishing whether the argument is dependent upon whether the document was drafted by the complaining party at their direction. The Petitioners' distinction does not exist and would not apply, as the documents at issue were prepared by Petitioners' counsel at the request of the Petitioners. (Doc. 1 at 92, Exhibits D, E, F, & G; *Affidavit of Joel M. Haber*, executed on August 26, 2020).

 In this case, the Petitioners do not challenge that they are sophisticated businesspersons. In

3

addition, they do not challenge that they had access to and obtained the advice of an attorney, Joel M. Haber, Esq., who filed an affidavit relating to documents he prepared and stating that he represented Sahib Arora during the August 2019 transactions. (*Affidavit of Joel M. Haber*, executed on August 26, 2020). As the Petitioners are sophisticated businesspersons, and they employed and obtained the advice of legal counsel to effectuate the contractual arrangements which they now claim are "coerced transactions," duress is not an available to undo their agreements, and each of the following claims must be dismissed for failure to state a claim:

    i.    Count I – Georgia RICO, in part, as the claim relates in any way to duress or theft by extortion relating to the alleged "Coerced Transactions" or alleged "Coerced Zillionaire Amendment";

    ii.    Count IV – Recission on the Grounds of Duress;

    iii.    Count VI – Recission on the Grounds of Illegality; and

    iv.    Count VII – Declaratory Judgment.

    v.    Count XIII – Imposition of an Equitable Lien

    vi.    Count XIV – Imposition of a Constructive Trust

    vii.    Count XXIV – Cancellation of Deeds[1]

## II. Petitioners Admit in their Pleadings that they Ratified and Continue to Ratify the Agreements Which Defeats Their Claims for Duress.

Further expanding on the case cited by Petitioners – *Gilmore v. Hunt* – a 1911 case, the Petitioners seemingly ignore the subsequent 1938 case of *Monk v. Holden,* 186 Ga. 549. In that case, the Georgia Supreme Court held "[w]here the execution of a contract is procured by duress, the person executing it may, after removal of the duress, waive the duress and ratify the contract."

---

[1] Petitioners added this claim, which is based on the same "procure[ment] by extortion and fraud as alleged herein," by way of their Second Amended and Restated Complaint filed with the Court on November 18, 2020. (Doc. No. 28, ¶¶ 248).

4

*Id.* at 555 (citing *August Motor Sales Co. v. King,* 36 Ga.App. 541 (1927)). A simple reading of several paragraphs of the Petition shows that the Petitioners ratified and continue to ratify the contracts they contend were procured under duress:

> After the August 2019 transactions, King Group and the Debtor jointly owned the properties at 5754 Attucks Boulevard and 5341 Snapfinger Drive. (Doc. No. 28 ¶ 28).
>
> King Group used Charanjeev as the selling agent for these properties. (Doc. No. 28 ¶ 237).
>
> King Group used the proceeds from the sale of these properties to participate in a 1031 like-kind exchange and Zillionaire purchased 3180 Atlanta Highway as a replacement property. (Doc. No. 28 ¶¶ 45, 49).
>
> King Group and Arora continue to actively solicit signatures from Ahuja on the "hard money" loan associated with 3180 Atlanta Highway. (Doc. No. 28 ¶ 50).
>
> Petitioners do not seek to rescind the purchases of 90 Hunters Chase or 3180 Atlanta Highway. (*See generally* Doc. No. 28).

Using Charanjeev as a selling agent for these properties, participating in a 1031 like-kind exchange involving these properties, and ultimately using funds to purchase another property from the proceeds of the sale of these properties does not amount to a person acting under duress. Importantly, Petitioners do not seek to rescind the sales of 5754 Attucks Boulevard and 5341 Snapfinger Drive. (*See generally* Doc. No. 28). This is because they have received benefits from the proceeds paid out of those transactions, namely the purchase of 3180 Atlanta Highway. Petitioners want to keep the benefits of the transactions allegedly procured under duress, which is contrary to the law. *See, e.g., Tidwell v. Critz,* 248 Ga. 201, 207 (1981) ("the trial court correctly found, as a matter of law, that Tidwell waived his claim of duress when he ratified the March 1980 contract by accepting benefits and performing under it.").

Petitioners have admitted to waiving any duress and ratifying the August 2019 and

5

subsequent transactions. Petitioners' own admissions in their pleadings provide the Court with another reason to dismiss Counts I, IV, VI, VII, XIII, XIV, and XXIV of the Petition.

### III. Petitioners' Argument Regarding Their Fraudulent Inducement Claim (Count V) is Barred by The Statute of Frauds, it is Impossible to Argue Reasonable Reliance, and Petitioners Admit they Waived the Alleged Fraud.

The Petitioners' argument in response to the Motion to Dismiss is that there has been no effort to show the applicable timeframe for which this Court can review whether the Petitioners sat on their rights. (Doc. No. 26 at 15-16). Petitioners stated they "did not know that the Defendants never had any intention of re-conveying the Pinetree Plaza Shopping Center back…" (Doc. No. 26 at 16).

However, Petitioners' argument violates the statute of frauds in that it is based on an alleged unwritten promise to convey an interest in real estate. In applicable part, the Georgia Statute of Frauds states:

> (a) To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him or her:
> …
> (4) Any contract for sale of lands, or any interest in, or concerning lands;

O.C.G.A. § 13-5-30(a). "Under Georgia's statute of frauds, "[a]ny contract for sale of lands, or any interest in, or concerning lands" must be in writing and signed by the party to be charged. OCGA § 13–5–30(4)." *James v. Safari Enterprises, Inc.*, 244 Ga. App. 813, 814, 537 S.E.2d 103, 104 (2000). Petitioners' argument is precisely the type of argument the statute of frauds was designed to prevent.

The Petitioners' claim for recission on the grounds of fraudulent inducement is predicated on the following alleged misrepresentation:

6

> Respondents represented to Dr. Arora and Vineet that if they agreed to the Coerced Zillionaire Amendment and cooperated in the sales of the Attucks Boulevard and Snapfinger Drive properties, Respondents would reconvey Maharaja's 50% ownership interest in Pinetree Plaza.

(Doc. No. 28 ¶ 141).

Under Georgia law, the party seeking to void a contract based upon fraud in the inducement must prove five elements: "(1) a false representation or concealment of material fact; (2) that the defendant new the representations or concealment were false; (3) an intent to induce the alleged defrauded party to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages as a result of the false representations or concealment." *Pacheco v. Charles Crews Custom Homes, Inc.*, 289 Ga. App. 773, 774–75, 658 S.E.2d 396, 398 (2008). "**When evidence as to any one of these elements is lacking, the fraud claim fails**." *Id*. (emphasis added).

While the Crown Respondents do not concede any of the elements, it is beyond contraction that the element of justifiable reliance cannot exist under the facts pled by the Petitioners. In one instance, the Petitioners claim that they executed the "Coerced Zillionaire Amendment" under duress to protect Ms. Arora, even though such execution occurred after her wedding. At the same time, Petitioners claim they simultaneously reasonably relied upon a representation made regarding an interest they would be provided. It is impossible to claim you were being coerced to do something, but reasonably relied on an unwritten promise from the alleged coercing parties. Moreover, the Petitioners claim that the Pinetree Plaza Shopping Center was obtained by the Debtor through the use of a fraudulent quitclaim deed. (Doc. No. 28 ¶ 32). There is no way to assert a legal argument that the property was improperly taken by fraudulent deed and the Petitioners were coerced to enter into the "Coerced Zillionaire Amendment," but, somehow, the

Petitioners reasonably relied on an oral promise by the Crown Respondents that the property would be reconveyed to the Petitioners.

Moreover, the Petitioners' argument regarding the lack of a timeframe for sitting on their rights is meritless. As mentioned above, the Petitioners' claim that the "Coerced Zillionaire Amendment" was the product of duress, and the property at issue was taken from them by a fraudulent deed. What the Petitioners failed to state is when was it that the Crown Respondents were to reconvey title pursuant to this alleged oral agreement. Thus, for another reason, the alleged oral agreement must fail for incompleteness.

Finally, Petitioners admit in their pleadings that they waived any alleged fraud. It is well settled that while "the affirmance of a contract with knowledge of fraud does not bar an action for damages [it] is subject to the limitations, that the party defrauded must stand towards the other party at arm's length, must comply with the terms of the contract on his part, *must not ask favors of the other party* or offer to perform the contract on conditions which he has no right to exact, and *must not make any new agreement or engagement respecting it*." *Gem City Motors v. Minton,* 109 Ga.App. 842, 848-849 (1964) (quoting *Tuttle v. Stovall,* 134 Ga. 325 (1910)) (emphasis added). After the August 2019 transactions, Petitioners entered into several further agreements with the Crown Respondents, received funds from the sale of properties allegedly procured through fraud, and even went as far as using Charanjeev as the selling agent on two properties. (Doc. No. 28 ¶¶ 45, 46, 49, 50, 237).

The Petitioners' argument violates the statute of frauds. In addition, it is impossible for the Petitioners' to argue justifiable reliance on an oral promise from individuals they claim had taken property from them by a fraudulent deed and then coerced them into transactions. Finally, the Petitioners admit in their pleadings that they had waived any alleged fraud. As such, Count V must

8

be dismissed for failure to state a claim upon which relief can be granted.

## IV.    Count VI – Rescission on Ground of Illegality Must Fail as a Matter of Law.

Petitioners' response to the request for dismissal of the claim for recission on ground of illegality requests that this Court disregard the language of the executed legal documents because Petitioners have classified the language destroying their claims to be "boilerplate," somehow attempting to dismiss the importance of such language. (Doc. No. 26 at 18). Instead of explaining how their pleadings survive the attack, the Petitioners ask the Court to the question "how would such a cause of action ever exist?" (*Id*.) Rather than asking the Court a question, when facing a motion to dismiss, Petitioners must show how the arguments against the existence of their particular claim are inapplicable. The Petitioners did not and cannot accomplish this requirement. "An illegal consideration consists of any promise or performance that is contrary to law or public policy." § 4:11.Consideration—Illegal, Ga. Contracts Law and Litigation § 4:11 (2d ed.). Nothing contained in any of the contracts at issue fall within this classification. As such, the Petitioners' claim must fail as a matter of law.[2]

Next, the Petitioners move to an argument that the consideration may be legal in part and illegal in part, thus allowing a contract to be avoided. (Doc. No. 26 at 18). Again, none of the consideration called out in any of the documents has been argued to be illegal. Instead, the Petitioners are attempting to impermissibly rely on parol evidence to vary the terms of the written agreements. "Parol evidence is inadmissible to add to, take from, or vary a written contract. …" O.C.G.A. § 13-2-2(1). Petitioners are improperly attempting to use parol evidence to add to and/or

---

[2] It is also important to note that for the same reasons discussed *supra* §§ II and III regarding waiver, that Petitioners' claims surrounding an illegal contract and monetary damages must fail as a matter of law. *See Hanley v. Savannah Bank & Trust Co.,* 208 Ga. 585, 587 (1952) ("If a contract be illegal as against public policy, its invalidity will be a defense while it remains unexecuted. If the illegal contract be **in part performed** and **money has been paid** in pursuance of it, no action will lie to recover the money.") (citations omitted) (emphasis added).

9

vary a written contract. Specifically, Petitioners argue:

> Plaintiffs allege in the Complaint that, notwithstanding the recitation of consideration in each of the contracts, the actual consideration flowing to Plaintiffs' was through extortion through the forbearance on the part of the Defendants in defaming Plaintiffs' sister and ruining her marriage.

(Doc. No. 26 at 19). Petitioners' argument is a direct contradiction to the parol evidence rule. Their own language clearly states as much: "notwithstanding the recitation of consideration in each of the contracts, the actual consideration…" (*Id.*).

As there has been no showing of illegal consideration and the Petitioners are attempting to alter the language of multiple written contracts through the use of prohibited parol evidence, Petitioners' claim fails to state a claim upon which relief can be granted and Count VI must be dismissed.

### V.     Count VII for Declaratory Judgment Must Fail as a Matter of Law.

A party seeking declaratory judgment "must establish that it is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests." *Atlanta Nat. League Baseball Club, Inc. v. F.F.*, 328 Ga. App. 217, 220 (2014); *see also In re King,* 2020 Bankr. LEXIS 2864 at *37-38 (Bankr. N.D. Ga. Oct. 14, 2020); 28 U.S.C. § 2201 (Declaratory Judgment Act). Further, the party "must show that the conduct is *actual*, not inferred, threatened, or hypothetical." *Id*. at *38 (citations omitted) (emphasis included). Petitioners do not aver that they are walking in the dark and seek guidance to avoid stepping in a hole.

The parties clearly disagree as to the validity of the alleged "Coerced Transactions" and the alleged "Coerced Zillionaire Amendment."  However, all of the parties have affirmatively stated their respective positions as to the validity of the documents, but the Petitioners are not are not averring they are at risk of taking a wrong action at all.  Petitioners aver that they face potential

10

sanctions from this Court if they take certain actions against property owned by the Crown Respondents. (Doc. No. 26 at 20). However, those actions are subject to the substantive claims in this case, and this Court is available to address any legitimate actions Petitioners feel are immediately necessary as to the Crown Respondents' assets. Instead, Petitioners are asking the Court to ignore the substance of the claims and the litigation associated therewith, and summarily review this case in an improper way. As such, Count VII fails to state a claim upon which relief can be granted and must be dismissed.

    **VI.    Count XIII for Imposition of an Equitable Lien, Count XIV for Imposition of a Constructive Trust, and Count XVI Request for Equitable Accounting Must Fail as a Matter of Law.**

The Petitioners misconstrue the nature of the argument in stating "Plaintiffs (sic) assert that, because Plaintiffs seek to recover money damages on some counts of the Complaint, no equitable remedies are available to Plaintiffs on other counts." (Doc. No. 26 at 21-22). That is an inaccurate statement. The argument is that it is impermissible for the Petitioners to seek monetary damages in one count and equitable relief in another count **based on the same issues**. In other words, the Petitioners are seeking monetary and equitable relief for the same things.

Ironically, Petitioners are attempting to do exactly what Petitioners' own brief states is impermissible: "a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." (Doc. No. 26 at 23) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)). In this action, per the pleading of the Petitioners in support of their claim for equitable lien:

> Respondents used some or all of the proceeds that they obtained
> from Petitioners through the unlawful acts set forth in this Petition
> to purchase interests in the following properties …

(Doc. No. 28 ¶ 187). By the Petitioners' own pleading, the assets for which the Petitioners seek claims of equitable lien and constructive trusts are not assets relating to the underlying disputes.

11

Instead, the Petitioners are attempting to secure assets through which they may recover on their money judgment in the event they are successful on their other monetary claims.

The Petitioners stated "Are money damages recoverable? Perhaps. Are money damages as (sic) adequate and complete remedy as equitable relief? That remains to be determined." (Doc. No. 26 at 24). What the Petitioners are actually saying is that they want to tie up the Crown Respondents' assets through pre-judgment attachment to assure there are sufficient assets to satisfy a judgment. That position is wholly improper and contrary to law. In addition, Petitioners' arguments are tied to their claims for recission, which, as addressed above herein, must also fail as a matter of law.

As stated in the *Dairy Queen* decision,

> The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in Beacon Theatres, the absence of an adequate remedy at law.
>
> …
>
> The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records.

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–79, 82 S. Ct. 894, 899–900, 8 L. Ed. 2d 44 (1962). Likewise, the Petitioners cannot characterize their legal remedies as inadequate because they would like to hold the Crown Respondents' assets hostage and prevent the ordinary course of business during the pendency of this dispute. *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1521 (11th Cir. 1994) (citations omitted) ("the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment."). The Petitioners' claim itself shows that it is seeking monetary relief, "[i]t is against equity that Respondents should

retain title to . . . purchased or maintained with funds obtained from Petitioners through the unlawful acts set forth in this Petition, **without restoring such funds to Petitioners**." (Doc No. 28 ¶ 190) (emphasis added). The claim for equitable lien itself pleads the sufficiency of monetary damages.

Although not necessary to the Crown Respondents' arguments, Petitioners' counsel acknowledged in open court that the Petitioners are seeking monetary relief. (Doc. No. 32, Exhibit A-1, 18:2-9). Specifically, Petitioners' counsel stated the following:

> Mr. Klein's argument seems to be along the lines – it's not really intelligible. The complaint says what it says. And Mr. Klein comes back around and tries to say, no, it says something else. Really what this is about is money damages. **Well, right**. **We could be satisfied with money damages** but that doesn't mean we don't have a right to impose an equitable lien to recover that money. That's the whole point of it.

(Doc. No. 32, Exhibit A-1, 18:2-9) (emphasis added).

The statement of Petitioners' counsel clearly shows that this is an improper attempt by the Petitioners to use an equitable claim when an adequate legal remedy exists to assist with post-judgment collections. In response to this, Petitioners' sole retore was:

> Defendants also cite to an uncertified draft of a purported transcript of the hearing before the Superior Court of Fulton County on Defendants' Motion to Cancel Lis Pendens – a motion that Defendants lost- to assert that Plaintiffs are seeking money damages.

(Doc. No. 26 at 22). It should be noted that Petitioners' counsel did not attempt to refute what was said in open court. In other words, the Petitioners did not challenge the authenticity of the quoted material, and instead merely retort that the transcript is not certified.

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, *see In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary

13

> judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. *See, e.g., Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). Given that the operative rule language is identical and that the provisions serve the same purpose, we believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well.

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Petitioners did not challenge the authenticity of the contents quoted, because counsel cannot do so under Bankruptcy Rule 9011(b). Further, the Crown Respondents have now obtained a certified copy of the transcript and have filed that with the Court in connection with this Reply Brief, thereby mooting Petitioners' argument.[3]

The claims for equitable lien and constructive trust, and request for equitable accounting fail to set forth a claim upon which relief can be granted, and therefore Counts XIII, XIV, and XVI must be dismissed.[4]

## VII. Conclusion

While none of Petitioners' claims have merit, the claims addressed herein fail to state a claim upon which relief can be granted. As such, respectfully request that this Court enter an Order:

(a) dismissing the following claims:

---

[3] These equitable claims must further fail as a matter of law because for the reasons discussed *supra* §§ II and III regarding waiver, if a party stands on a contract, here by not seeking rescission of the 5754 Attucks Boulevard and 5341 Snapfinger Park Drive sales, equitable relief is not available. *See Mitsubishi Int'l Corp.* 14 F.3d at 1520.

[4] In addition, Petitioners failed to adequately address why their equitable accounting claim should not be dismissed, and therefore the Court should deem that Petitioners have abandoned that claim.

1. Count I – Georgia RICO, in part, as the claim relates in any way to duress or theft by extortion relating to the alleged "Coerced Transactions" or alleged "Coerced Zillionaire Amendment";

2. Count IV – Recission on the Grounds of Duress;

3. Count VI – Recission on the Grounds of Illegality;

4. Count VII – Declaratory Judgment; and

5. Count XIII – Imposition of an Equitable Lien;

6. Count XXIV – Cancellation of Deeds;

(b) ordering that the Notices of Lis Pendens filed by Petitioners in connection with the above-referenced claims be canceled of record;

(c) ordering that Petitioners replead their fraud claim with sufficient specificity; and

(d) ordering any further and necessary relief.

[Signatures of counsel on following page]

Respectfully submitted this 3rd day of December, 2020.

**ROUNTREE LEITMAN & KLEIN, LLC**

/s/ David S. Klein
William A. Rountree
Georgia Bar No. 616503
wrountree@rlklawfirm.com

David S. Klein
Georgia Bar No. 183389
dklein@rlklawfirm.com

Benjamin R. Keck
Georgia Bar No. 943504
bkeck@rlklawfirm.com

*Counsel for the Debtor Crown Assets, LLC and Counsel for the Remaining Crown Respondents*

Century Plaza I
2987 Clairmont Road, Suite 175
Atlanta, Georgia 30329
(404) 584-1238

- and -

**MATT THIRY LAW, LLC**

/s/ Matthew R. Thiry
Matthew R. Thiry
Georgia Bar No. 100131
Matt@MattThiryLaw.com

*Special Counsel for the Debtor Crown Assets, LLC and Counsel for the Remaining Crown Respondents*

P.O. Box. 923054
Peachtree Corners, Georgia 30010
(678) 883-6127

16

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CROWN ASSETS, LLC, | ) | Case No. 20-21451-JRS |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| SAHIB ARORA; VINEET SINGH; | ) | Removed Case: |
| KING GROUP MGMT, LLC; | ) | |
| MAHARAJA INVESTMENTS, LLC; and | ) | Fulton County, Superior Court, |
| ZILLIONAIRE ASSETS, LLC, | ) | Case Number 2020CV339119 |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: |
| | ) | |
| CHARANJEEV SINGH; KARAN S. AHUJA; | ) | 20-02041-JRS |
| JARNAIL SINGH; JONIKA ARORA; | ) | |
| CROWN ASSETS, LLC; 2551 E PINETREE | ) | |
| BLVD MGMT LLC; 2551 EAST PINETREE | ) | |
| BLVD LLC; 4319 COVINGTON HWY LLC; | ) | |
| 140 W DYKES STREET LLC; 1604 E | ) | |
| OGLETHORPE BLVD LLC; KING ASSETS, | ) | |
| LLC; and 2505 S MAIN STREET, LLC, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this day served a true and correct copy of the foregoing REPLY IN SUPPORT OF RESPONDENTS CHARANJEEV SINGH, KARAN S. AHUJA, JARNAIL SINGH, JONIKA ARORA, CROWN ASSETS, LLC, 2551 E PINETREE BLVD MGMT LLC, 4319 COVINGTON HWY, LLC, 140 W DYKES STREET LLC, 1604 E OGLETHORPE BLVD, LLC, KING ASSETS, LLC, AND 2505 S MAIN STREET, LLC'S MOTION TO DISMISS IN PART upon the following parties listed below by filing a copy of same with the Court's CM/ECF system, which will automatically provide a copy of same to them:

Michael A. Dominy
The Dominy Law Firm, LLC
729 Piedmont Avenue, NE
Atlanta, Georgia 30308
michael@dominylaw.net

and by electronic mail on the following parties:

Ramsey A. Knowles
Knowles Gallant LLC
Suite 350
3400 Powers Ferry Road
Atlanta, Georgia 30339
rknowles@knowlesgallant.com

This 3rd day of December, 2020.

**ROUNTREE, LEITMAN & KLEIN, LLC**

/s/ David S. Klein
David S. Klein
Georgia Bar No. 183389
Century Plaza I
2987 Clairmont Road, Suite 175
Atlanta, Georgia 30329
(404) 584-1238
dklein@rlklawfirm.com